Filed 12/23/22  P. v. Drummer CA6
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H048576 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1477595) |
| v. | |
| MARCELLOUS BERNARD DRUMMER, | |
| Defendant and Appellant. | |

Opinion following remand from Supreme Court.

In November 2014, a Santa Clara County jury found defendant Marcellous Bernard Drummer guilty of six crimes related to a home invasion robbery, including murder (Pen. Code, § 187[1]), robbery of an inhabited place while acting in concert (§§ 211, 213, subd. (a)(1)(A)), battery (§ 242), criminal threats (§ 422), and two counts of false imprisonment (§§ 236, 237).  The jury also found true a robbery-murder special circumstance allegation (§ 190.2, subd. (a)(17)) and gang sentence enhancement allegations (§ 186.22, subd. (b)(1)).  Additionally, the trial court found true a prior prison

---

[1] Unspecified statutory references are to the Penal Code.

term allegation (former § 667.5, subd. (b)).  At sentencing, the trial court imposed a determinate term of 11 years and consecutive indeterminate terms of life imprisonment without the possibility of parole and 15 years to life.  Drummer appealed the judgment of conviction.

During the pendency of Drummer's direct appeal, our Supreme Court clarified the meaning of the felony-murder special circumstance statute in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

In June 2017, this court reversed the judgment and directed the trial court to strike a 10-year gang sentence enhancement imposed on the murder count, strike the battery conviction, and correct certain errors in the abstract of judgment.  (See *People v. Drummer* (June 15, 2017, H041826) [nonpub. opn.] (*Drummer I*).[2])  In his appeal, Drummer did not raise any claim of error based on *Banks* or *Clark*.  (See *Drummer I*, *supra*, H041826.)

In September 2019, Drummer filed a petition in the trial court to vacate his murder conviction and be resentenced under former section 1170.95 (hereafter petition).[3]  In October 2020, the trial court denied Drummer's petition without issuing an order to show cause.

---

[2] By separate order in this case, we granted Drummer's request that we take judicial notice of our records in his direct appeal (case No. H041826).

[3] In 2021, the Legislature "amended section 1170.95 in several respects, including (1) clarifying that, in some circumstances, the same relief available to persons convicted of murder is also available to persons convicted of attempted murder or manslaughter [citation]; and (2) addressing various aspects of the petition procedure, including the petitioner's right to counsel, the standard for determining the existence of a prima facie case, the burden of proof at the hearing to determine whether a petitioner is entitled to relief, and the evidence a court may consider at that hearing."  (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. omitted; see Stats. 2021, ch. 551, §§ 1, 2, eff. Jan. 1, 2022).  In 2022, the Legislature further renumbered section 1170.95 as section 1172.6, with no change to the text of the statute (Stats. 2022, ch. 58, § 10, eff. June 30, 2022).

Drummer appealed, and we reversed the trial court's order. The California Supreme Court granted review and held this case pending its decision in *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). After it decided *Strong*, the Supreme Court remanded this case to us with directions to vacate our prior decision and reconsider the matter in light of *Strong*. Drummer filed a supplemental brief arguing that *Strong* requires reversal of the trial court's order and remand to the trial court for an evidentiary hearing on his petition. The Attorney General, by contrast, urges us to remand the matter and direct the trial court to determine whether a prima facie case has been established.

For the reasons explained below, we reverse the trial court's order and remand with directions to issue an order to show cause and conduct further proceedings under section 1172.6.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. *Facts of the Crime as Presented at Drummer's 2014 Trial*[4]

Katrina Fritz worked as a prostitute and had a multi-year relationship with Raveesh Kumra. Raveesh shared a home with his ex-wife, Harinder Kumra. Shortly after Thanksgiving in 2012, Fritz's younger brother, DeAngelo Austin, told Fritz that he was going to go to the Kumras' house, which Fritz understood to mean that Austin was going to rob the Kumras. Later, Austin and Drummer met with Fritz. Drummer had known Austin since childhood, and they were members of the same criminal street gang. Drummer also had known Fritz for about 10 years. During their meeting, Fritz gave Austin a sketch of the Kumras' house and pointed out Raveesh's and Harinder's bedrooms. Drummer "said something like, 'I bet you they have a lot of gold.' " A third man sat inside Austin's car during the meeting.

On the night of November 29, 2012, Harinder awoke when Austin entered her bedroom. Austin hit, threatened, and walked Harinder downstairs to the kitchen. When

---

[4] We take these facts from this court's opinion in *Drummer I*, *supra*, H041826 and the trial record.

3

Harinder got to the kitchen, "she saw Raveesh standing up with his hands tied behind his back. Raveesh was struggling and asking for help. The men pushed Raveesh to the floor. [¶] Harinder twice said, 'Don't push him. He's a heart patient. He'll die. And he has a breathing problem.' " The men blindfolded and bound Harinder and told her to lie down on the floor. "Someone yelled at her, 'Don't move. You're moving,' and then hit her on the legs." The men took the jewelry Harinder was wearing, and one of the robbers asked her the location of the money and safe. "Harinder said to [the men] many times, 'He has not moved. Please check him out. Please check him.' There was a person sitting near her, who told her that Raveesh was okay. He said, 'Don't worry. We'll call 911 if anything goes wrong. Okay?' He later said, 'I'm going to gather the other people now. We will be going very soon, but don't you get up. If you do, it won't be good.' The man also told her, 'Okay. I'm going to gather people. Don't get up until we come back and tell you when to get up.' He left and she waited." Eventually, Harinder freed herself, retrieved a cell phone, and called 911.

Police and paramedics arrived and found Raveesh unresponsive. "The cause of death was probable asphyxia due to suffocation resulting from the duct tape over his mouth." The robbers had ransacked the house and taken several items, including cash, coins, jewelry, and gifts.

Later, Fritz met Drummer and Austin at a restaurant. "[Drummer] told her, 'Shit. It went bad. . . . It went bad, like, he's dead.' . . . As Austin later told [Fritz] what had happened, [Drummer] was agreeing with him. Fritz responded, '[T]his is going to be bad.' Both [Drummer] and Austin told her not to worry and that they would confess to the crimes." In addition, when asked by Fritz about his actions during the crime, Drummer said that he "just sat there and, like, watched [Raveesh]."[5] Austin gave Fritz $2,000 in cash at the restaurant and another $40,000 the following week.

---

[5] In contrast to Fritz's testimony about what Drummer had said to her about sitting and watching Raveesh, Harinder testified that she thought it was Austin who had sat near

"A prosecution expert testified that [Drummer] was a possible contributor to the DNA collected from a swab of Raveesh's right hand. In her opinion, it was 5,000 times more likely that [Drummer] contributed to the DNA on the swab than an unknown individual in the African-American population. Austin and Javier Garcia were contributors to DNA found on other items in the Kumras' residence."[6]

Cell phone records showed that phones associated with Drummer, Austin, and Garcia were in the area around the Kumras' residence on the night of the crime. Additionally, during a jail phone call, Drummer referenced a purse that police had seized from his acquaintance, saying, " 'That ain't the purse [stolen from Harinder] so they gon' be up and give [the acquaintance] that back.' "

B. *Instructions, Arguments, and Verdicts at Trial*

At Drummer's 2014 trial, the trial court instructed (and the prosecution argued) that the jurors could find Drummer guilty of robbery (personally or as an aider and abettor) and murder based on the natural and probable consequences of committing a robbery, the natural and probable consequence of an uncharged conspiracy to commit robbery, and/or felony murder. However, the instructions that specifically addressed the elements of murder only instructed the jury as to first-degree felony murder and told the jury that murder was charged in this case "under a theory of felony murder."

Regarding the felony-murder special circumstance allegation, the trial court instructed the jury with CALCRIM Nos. 700 and 730 and a then-current version of CALCRIM No. 703. Under CALCRIM No. 700, the jury was instructed that if it found Drummer guilty of first degree murder, it also had to decide whether the People have proved that the special circumstance is true. Under CALCRIM No. 730, the jury was told

_____

her during the attack, checked on Raveesh at her request, and ordered the other men around.

[6] Austin and Garcia were tried together for this incident in April 2016. (See *People v. Garcia* (2020) 46 Cal.App.5th 123, 130.)

5

that the People had to prove: (1) the defendant aided and abetted or was a member of a conspiracy to commit robbery; (2) the defendant intended to commit, or intended to aid and abet the perpetrator in committing or intended that a member of the conspiracy commit robbery; (3) if the defendant did not personally commit robbery, then a perpetrator whom the defendant was aiding and abetting before or during the killing or with whom the defendant conspired personally committed robbery; and (4) the defendant or a perpetrator did an act that caused the death of another person. The instruction further required: "The defendant must have intended to commit, or aided and abetted or been a member of a conspiracy to commit the felony of robbery before or at the time of the act causing the death. [¶] In addition, in order for this special circumstance to be true, the People must prove that the defendant intended to commit robbery independent of the killing."

The instruction under CALCRIM No. 703 stated in part: "In order to prove this special circumstance for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor or a member of a conspiracy, the People must prove either that the defendant intended to kill, or the People must prove all of the following: [¶] 1. The defendant's participation in the crime began before or during the killing; [¶] 2. The defendant was a major participant in the crime; [¶] AND [¶] 3. When the defendant participated in the crime, he acted with reckless indifference to human life. [¶] A person acts with reckless indifference to human life when he or she knowingly engages in criminal activity that he or she knows involves a grave risk of death."

In his closing argument to the jury, the prosecutor stated that the People "have no evidence [Drummer] was the actual killer" and "[w]e don't know where Mr. Drummer was when Mr. Kumra was taped." The prosecutor also acknowledged that it was Fritz's opinion that "neither her brother nor Mr. Drummer had any intent to kill Mr. Kumra." Nevertheless, the prosecutor urged the jury to find the felony-murder special

6

circumstance true because Drummer was a major participant in the crime and acted with reckless indifference to human life.

On November 4, 2014, the jury returned a general verdict on the murder charge, finding Drummer guilty "in violation of Penal Code [section] 187, a Felony, as charged in the Information." Similarly, for the special circumstance, the jury returned a general verdict, finding the "[a]llegation that Defendant was engaged in or was an accomplice in the commission, the attempted commission, or the immediate flight after the commission or attempted commission of a felony, Robbery, in violation of Penal Code [section] 211 or [section] 212.5, within the meaning of Penal Code [section] 190.2[, subdivision] (a)(17) to be [t]rue."

In a motion for a new trial, Drummer broadly contended that there was insufficient evidence for "the required intent or mental state as harbored by [him] in order to establish his guilt." Drummer "further submitted that the evidence is insufficient as to the special circumstance as set forth in [CALCRIM No.] 703. The evidence establishes that he was not the actual killer. The evidence does not satisfactorily establish that he was a major participant in the offense and it was not proved that he acted with the intent to kill or with the reckless indifference to [human] life."

The prosecutor opposed Drummer's motion, asserting there was sufficient evidence to sustain the jury's verdicts. The prosecutor again conceded Drummer was not the actual killer and argued: "In order to find the special circumstance true, because the Defendant was not the actual killer, the Jury had to have found that the Defendant joined the robbery during or before the killing, he was a major participant and he acted with reckless indifference to human life."

In December 2014, the trial court denied Drummer's motion for a new trial. The court noted the DNA evidence, cell phone evidence, and testimony of Fritz and Harinder, and stated that "a reasonable jury could easily come to the conclusion that this jury did."

7

C. *Direct Appeal*

In his appeal from the judgment of conviction, Drummer filed his opening brief on September 28, 2016. The Attorney General filed her brief on November 21, 2016. Drummer filed his reply brief on November 29, 2016.

Drummer did not raise any claim challenging the sufficiency of the evidence for the jury's special circumstance finding or otherwise mention *Banks* or *Clark*—both of which had been issued by our Supreme Court after Drummer's trial but before he filed his opening brief.[7]

As mentioned *ante*, on June 15, 2017, this court reversed the judgment with directions to strike a gang sentence enhancement and the battery conviction and to correct the abstract of judgment. (*Drummer I*, *supra*, H041826.)

D. *Proceedings on the Former Section 1170.95 Petition*

On September 9, 2019, Drummer filed on his own behalf a petition for resentencing pursuant to former section 1170.95. He alleged that he was convicted of first-degree felony murder and could not be convicted under current murder law because he was not the actual killer, he did not aid or abet the actual killer with an intent to kill, he either was not a major participant in the felony or did not act with reckless indifference to human life during the course of the felony, and the victim was not a peace officer performing his or her duties.

The trial court appointed counsel for Drummer and obtained briefing on the petition from the Santa Clara County District Attorney and Drummer's counsel. The district attorney opposed Drummer's petition arguing, inter alia, that the jury's finding on

---

[7] We note that Drummer's appellate counsel wrote the following when claiming that section 190.2, subdivision (a)(17)(A) failed to meaningfully narrow the class of defendants subject to it: "Although there was no definitive evidence that Drummer was one of the actual killers, and the jury did not make an express finding, there was evidence to support such a finding. . . . Thus, the jury may have concluded that Drummer was the actual killer, and found the special circumstance allegation true on that basis."

the felony-murder special circumstance allegation rendered former section 1170.95 inapplicable and Drummer had not made the requisite prima facie showing that he could not be convicted of murder under current law. The district attorney asserted that "[t]he jury found that [Drummer], based on the facts adduced at the jury trial, was a major participant in the robbery who acted with reckless indifference to human life." The district attorney also maintained that, regardless of the jury's special circumstance finding, "the facts adduced at the jury trial provide uncontradicted evidence that [Drummer] was a major participant in the robbery who acted with reckless indifference to human life."

In his reply to the district attorney's opposition, Drummer argued that an order to show cause should issue because, "[i]n light of the changes brought about by *Banks* and *Clark*," he "could not now be convicted of murder. That is, under the law as it stands today, he was not a major participant in the robbery and he did not act with a reckless indifference to human life." Drummer also asserted that the jury's special circumstance finding "does not negate the prima facie case."

On October 20, 2020, the trial court denied Drummer's petition without issuing an order to show cause. The court explained: "[I]n this case, the jury finding of special circumstance is part of the court record of conviction. [¶] I should also point [out] I'm uniquely familiar with the facts in this case because I tried the co-defendant, DeAngelo Austin, who, along with Mr. Drummer, were kind of the organizers of this home invasion that took place. [¶] But I am familiar with the facts, which is of no consequence, really, other than the fact that I am aware of testimony that came out during my trial with regard to the actions of Mr. Drummer during the home invasion, as well as actions of other people who were involved in this. [¶] So I think that testimony is also part of the court record of conviction, to an extent. But specifically, the jury finding of special circumstance is part of the court record of conviction, and I think in this case -- I think since the jury found the special circumstance to be true, at least upon the instructions that

9

were given to them, I think that that's binding on this court. [¶] So I think that, given that the jury found the special circumstance to be true, I think that not only could Mr. Drummer be convicted under the new law. I think, in a sense, he was convicted under the new law because the jury did find that he was a major participant and exhibited reckless disregard for human life. [¶] So I think based upon that, I'm going to deny the petition."

Seeking clarification of the trial court's ruling, Drummer's counsel asked the court if its ruling was based on the jury's special circumstance finding alone or if it was also relying on the facts "as the court knows them" from Austin's trial. The trial court responded that it "can't wipe those [facts] out of [its] mind" and said that the facts about Drummer "sitting watch over these two people, and, basically assaulting [Harinder] when she was trying to plead for someone to call medical assistance for her husband" were "the facts" in the Austin case and "also the facts alleged in [this] case -- in [counsel's] brief as to what happened at the time" of the crime. Counsel then asked a follow-up question about whether "it's both the jury's finding, as well as the facts [as] alleged in the brief?" The court responded, "Yes. But, primarily, the jury's finding, because that is part of the . . . court record of conviction."

Drummer timely appealed the trial court's order denying his petition.

## II. DISCUSSION

This court originally reversed the trial court's order, and the California Supreme Court granted review and held this case pending its decision in *Strong*, *supra*, 13 Cal.5th 698. Pursuant to our Supreme Court's subsequent order, we vacated our prior decision and now reconsider the case in light of *Strong*. Drummer filed a supplemental brief arguing that *Strong* requires reversal of the trial court's order and remand for issuance of an order to show cause and an evidentiary hearing on his petition. The Attorney General disputes Drummer's contention arguing that, on remand, the trial court should be allowed to determine whether a prima facie showing for issuance of an order to show cause has

10

been established.  We conclude that the trial court's order must be reversed and an order to show cause should issue.

In *Strong*, the California Supreme Court held that a felony-murder special circumstance finding made prior to its decisions in *Banks* and *Clark* does not categorically preclude a defendant from making a prima facie showing of eligibility for relief under section 1172.6.  (*Strong*, *supra*, 13 Cal.5th at p. 720.)  "Section 1172.6 offers resentencing for petitioners who have not been determined beyond a reasonable doubt to have the degree of culpability now required for a murder, attempted murder, or manslaughter conviction.  Neither the jury's pre-*Banks* and *Clark* findings nor a court's later sufficiency of the evidence review amounts to the determination section 1172.6 requires, and neither set of findings supplies a basis to reject an otherwise adequate prima facie showing and deny issuance of an order to show cause."  (*Ibid*.)

The prima facie inquiry under section 1172.6, subdivision (c) is "limited." (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).)  The court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Ibid*.)  Although the court may rely on the record of conviction in determining whether defendant has made a prima facie showing, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id*. at p. 972; see also *Strong*, *supra*, 13 Cal.5th at p. 720 [rejecting an "after-the-fact review of a pre-*Banks* and *Clark* record" at the prima facie showing stage because such a determination would entail prohibited factfinding].)

In the present case, the jury's November 2014 felony-murder special circumstance finding occurred before the California Supreme Court's rulings in *Banks* and *Clark* in 2015 and 2016.  Hence, the 2014 finding did not preclude Drummer from making a prima facie showing in support of a section 1172.6 petition.  (*Strong*, *supra*, 13 Cal.5th at p. 721.)  Nor is the trial court's evaluation of the facts at the prima-facie showing stage a

proper basis for denying an order to show cause. (*Id.* at p. 720.) Consequently, the trial court erred in denying Drummer's petition on the basis of the 2014 felony-murder special circumstance finding and its evaluation of the facts.

Furthermore, Drummer's petition alleged the facts necessary for relief under section 1172.6 (§ 1172.6, subds. (a)–(c)) and nothing in the record demonstrates that he is ineligible for relief as a matter of law. Because Drummer's petition made a prima facie showing of entitlement to relief (see *Lewis*, *supra*, 11 Cal.5th at pp. 970–972; § 1172.6, subd. (c); see also *Strong*, at p. 720), we will remand the matter to the trial court with directions to issue an order to show cause and hold further proceedings under section 1172.6.

## III. DISPOSITION

The trial court's October 20, 2020 order is reversed, and the matter is remanded with directions to issue an order to show cause and conduct further proceedings in accordance with Penal Code section 1172.6.

_____
                           Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
Grover, J.

**H048576**
***People v. Drummer***